# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DARYL H. CHIDSEY, | ) | CASE NO. 1:20-cv-01858 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.,* | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Daryl H. Chidsey (Plaintiff), challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. Procedural History

On February 23, 2018, Plaintiff protectively filed his application for DIB, alleging a disability onset date of October 13, 2016 (R. 11, Transcript (Tr.) 164-171). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 106-111, 115-116 ). Plaintiff participated in the hearing on June 26, 2019, was represented by counsel, and testified. (Tr. 34-70). A vocational expert (VE) also participated and testified. *Id*. On July 19, 2019, the ALJ found Plaintiff not disabled.

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

(Tr. 12-32). The Appeals Council denied Plaintiff's request to review the ALJ's decision on June 16, 2020, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 15, 17, 18).

Plaintiff asserts the following assignments of error: (1) The ALJ failed to reconcile the opinion of Dr. Proctor, which was found persuasive, with the RFC determination. Alternatively, it is argued the ALJ failed to explain why limitations from this opinion were not included in the RFC. (2) The ALJ failed to properly evaluate the opinions of PT Wood and Dr. Radigan under the Commissioner's rules. (R. 15 PageID# 1161).

## II. Evidence

### A. Relevant Medical Evidence[2]

#### 1.  Treatment Records

##### a. Mental Impairments

On April 25, 2017 psychologist Cynthia Van Keuren, Ph.D., documented Plaintiff's complaints that pain greatly impacted his life and that his pain included an emotional component, concluding Plaintiff would benefit from additional therapies. (Tr. 754). Dr. Van Keuran observed Plaintiff appeared "casually and cleanly dressed, alert, cooperative, and showed good eye contact[,]" he "did not demonstrate any visible pain behaviors during the interview" despite complaints of 9/10 pain, and he had normal speech and volume. (Tr. 753). Although Plaintiff initially appeared "guarded at the beginning of the evaluation as he was unsure why he was

---

[2]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

meeting with a psychologist about his pain, however, he opened up and became more comfortable as the interview went on." (Tr. 753). Dr. Van Keuren diagnosed plaintiff with an adjustment disorder with depressed mood. (Tr. 754).

On August 14, 2018, Thomas Evans, Ph.D., evaluated Plaintiff at the request of the state agency. (Tr. 819). Dr. Evans observed Plaintiff had a normal or unremarkable presentation and concluded Plaintiff did not meet DSM-5 criteria for a psychiatric disorder. (Tr. 822).

On March 19, 2019, Monica Proctor, M.D., conducted a "Compensation and Pension Examination" at which time Plaintiff appeared cooperative, pleasant, alert and oriented with good eye contact. (Tr. 956-962). Dr. Proctor observed Plaintiff needed to shift with pain, but he was able to demonstrate an average intelligence and fund of knowledge, he had no observable signs of difficulties with concentration, and his mood was mildly to moderately depressed. (Tr. 962).

### b. Physical Impairments

On December 5, 2016, Physical Therapist Christopher Wood assessed Plaintiff's functioning to determine work restrictions as part of the U.S. Department of Veterans Affairs analysis of Plaintiff's ability to participate in a return-to-work program. (Tr. 320-27). Plaintiff informed PT Wood of his long standing history of left knee problems, lower back pain with radiculopathy and bilateral carpal tunnel syndrome. (Tr. 323). Plaintiff described his pain as an 8/10 with exacerbating factors including walking, standing, bending, transfers, squatting and lifting. *Id*. Plaintiff told PT Wood that he lost his last sedentary job due to downsizing, but he was uncertain if he could return to full time work due to difficulty with prolonged sitting. (Tr. 323).

Mr. Wood referenced a lumbar spine x-ray revealing mild multilevel disc bulging with no

disc herniation or stenosis. (Tr. 324). Mr. Wood observed Plaintiff to have 5/5 gross global upper and lower extremity strength and full active range of motion in the upper and lower extremities, and cervical spine, and 25% limitation in the lumbar spine active range of motion for bilateral flexion and extension. (Tr. 325). Mr. Wood observed Plaintiff had difficulty completing the examination "secondary to his high levels of pain." (Tr. 327). Plaintiff required 2-4 minute sitting breaks after 1-2 tests and also needed to lay down. *Id*.

Plaintiff started a short course of outpatient physical therapy for low back pain on February 6, 2017, and returned for a second short course from August 31, 2017 through October 2, 2017, when he was discharged due to "lack of progress toward goals and limited motivation to continue participation." (Tr. 507-10, 685).

On September 21, 2017, an MRI showed multilevel degenerative disease with neuroforaminal narrowing and mild central canal stenosis of the lumbar spine. (Tr. 315-17).

On December 4, 2017, Patricia Radigan, M.D., observed Plaintiff to have good range of motion in the right knee despite complaints of knee pain. (Tr. 588). Plaintiff reported he was using over the counter acetaminophen for pain and Icy Hot on his lower back and knees. (Tr. 586-87). In June 2018, Plaintiff presented with complaints of 9/10 pain, while Dr. Radigan noted Plaintiff appeared in no acute distress on examination. (Tr. 828-29).

On July 19, 2018, Dariush Saghafi, M.D., examined Plaintiff at the request of the State agency. (Tr. 810). Plaintiff presented using a wheeled walker for ambulation. *Id*. Plaintiff maintained 5/5 muscle strength in the upper and lower extremities, and normal muscle tone and bulk. (Tr. 811). Plaintiff's gait appeared antalgic and he appeared tender to palpation over the lumbar vertebral bodies. (Tr. 812). Plaintiff maintained normal range of motion with the exception of some reduced dorsolumbar spine motion due to pain, and he had a 10% reduction in

4

tactile sensation in the right thigh. (Tr. 812).

On November 14, 2018, Plaintiff returned to Mr. Wood for a second functional capacity evaluation complaining of worsening symptoms and the need for a rollator walker for ambulation. (Tr. 907-08, 913). Mr. Wood noted Plaintiff complained of 9/10 pain throughout the exam, which appeared too high based on his presentation. (Tr. 913).

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On December 5, 2016, PT Wood and co-signer Patricia E. Radigan, M.D., opined "The client tested into the sedentary to unemployable range. H[is] previous positions was [sic] sedentary based work, however, he was able to change positions freely. If he is able to do this he may be able to perform part-time work." (Tr. 327).

On August 21, 2018, psychological consultant Thomas M. Evans, Ph.D. evaluated Plaintiff at the request of Opportunities for Ohioans with Disabilities and found: the claimant would not appear to have difficulties understanding, remembering or carrying out simple to moderately complex instructions in a work place setting. (Tr. 822). With respect to maintaining attention, concentration, persistence and pace, Dr. Evans opined, "[t]he claimant displayed good attention and concentration throughout the exam. * * * He was able to maintain focus without any difficulties." *Id*. With respect to Plaintiff's ability to respond appropriately to supervision and coworkers, Dr. Evans noted that, "[c]laimant denied having difficulties getting along with fellow coworkers or bosses. He denied having any difficulties in getting along with authority figures or follow[ing] directives." *Id*. Dr. Evans concluded that plaintiff had "no psychiatric symptoms that would affect his ability to respond to typical workplace stressors." *Id*.

On July 19, 2018, medical consultant Dariush Saghafi, M.D., opined Plaintiff was "able to lift, push and pull sufficiently to be able to perform ADL's [activities of daily living] up to 10-15

lbs [pounds]." He is "able to bend, walk and stand for about 100 yds [yards] before having to take a break. [Plaintiff] is able to understand the environment as well as peers and communicate satisfactorily. [Plaintiff] is able to travel independently." (Tr. 812).

On August 23, 2018, State agency psychological evaluator Karen Terry, Ph.D., evaluated the record and relying on Plaintiff's ability to perform household chores, handle finances, and do his own shopping, concluded Plaintiff had no limitation in his ability to understand, remember or apply information, no limitation in interacting with others, mild limitation in his ability to concentrate, persist, or maintain pace and no difficulty adapting or managing oneself. (Tr. 80-81). Dr. Terry concluded Plaintiff had "No severe psych impairment at this time." (Tr. 80).

On July 31, 2018, State agency medical evaluator Rannie Amiri, M.D., evaluated the record and concluded Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and had an unlimited ability to push and/or pull other than shown for lift and/or carry. (Tr. 82). Dr. Amiri opined Plaintiff could occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds, frequently balance, occasionally stoop, frequently kneel, frequently crouch, and occasionally crawl. (Tr. 83). Dr. Amiri concluded Plaintiff should avoid operating dangerous machinery and exposure to unprotected heights. (Tr. 84).

On September 23, 2018, State agency psychological evaluator Paul Tangerman, Ph.D., evaluated the record and concurred with Dr. Terry's prior opinion from August 2018.

On September 22, 2018, State agency medical evaluator Elizabeth Das, M.D., evaluated the record and concurred with Dr. Amiri's opinion, except she further restricted Plaintiff to occasional, rather than frequent, kneeling. (Tr. 96-98).

On February 21, 2019, physician assistant Gerald Hopperton opined Plaintiff could not

perform prolonged walking, standing, sitting, lifting, twisting, bending, and going up and down

stairs. (Tr. 989, 999).

On March 19, 2019, Dr. Proctor performed the Compensation and Pension Examination,

referenced above, and concluded:

> [Mr. Chidsey] is considered fully capable of managing funds in his own best
> interest. His ability to understand and follow instructions is considered not
> impaired. His ability to retain instructions as well as sustain concentration to
> perform simple tasks is considered not impaired. His ability to retain instructions
> as well as sustain concentration to perform complex tasks is considered
> occasionally mildly impaired. His ability to sustain concentration to task
> persistence and pace is considered occasionally mildly impaired. His ability to
> respond appropriately to coworkers, supervisors, or the general public is
> considered not impaired. His ability to respond appropriately to changes in the
> work setting is considered not impaired. His ability to accept criticism is
> considered not impaired. His ability to be flexible in the work setting is
> considered not impaired. His ability to work in groups is considered not impaired.
> His ability for impulse control in the work setting is considered mildly impaired.
> His ability to deal with the daily stress of a work environment is felt to be not
> impaired. His reliability and effectiveness in the work setting is felt to be not
> impaired. His ability to effectively communicate with others in the work setting is
> felt to be not impaired. He is unlikely to miss days from work d/t mental health
> symptoms.

(Tr. 963).

## B. Relevant Hearing Testimony

During the November 26, 2019 administrative hearing, Plaintiff testified as follows:

- He did not use the rollator "exclusively" but "periodically". (Tr. 55). He does use the

  rollator walker at home and to sit. (Tr. 58).

- He used to fish and hunt, but had not gone "big game" hunting in five years. (Tr. 55-56). He

  owns a boat. *Id*. He hunts rabbits on his property. *Id*.

- He has numbness down his right leg and occasionally his left. (Tr. 56).

- He has problems with his memory stemming from pain onset, and mood irritability. (Tr.

59).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 404.1509.

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§

404.1520(g), 404.1560(c).

## IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2022.

2. The claimant has not engaged in substantial gainful activity since October 13, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: multilevel degenerative disease of the lumbar spine, more prominent at L3-4 and L4-5, mild disco-osteophytic bulging at L3-4 with moderate right neuroforaminal narrowing and mild to moderate left neuroforaminal narrowing and mild central canal stenosis, and mild disco-osteophytic bulging at L4-5 with bilateral mild to moderate neuroforaminal narrowing and mild central canal stenosis; postsurgical changes of the left knee and mild degenerative changes of the right knee; and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can frequently operate right and left foot controls; frequently operate right and left hand controls; frequently handle with the right and the left; frequently finger with the right and the left; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle; and frequently be exposed to humidity and wetness.

6. The claimant is capable of performing past relevant work as a collection clerk and as a manager, credit union. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was born on ***, 1963 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10. In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has also acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a and 404.1568(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 13, 2016, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 17, 19-20, 26-27).


## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

### 1. Mental Limitations Not Included in Residual Functional Capacity (RFC)

Plaintiff's first assignment of error contends the ALJ's RFC failed to include any limitations corresponding to Plaintiff's "non-severe impairments" such as depression, pursuant to SSR 96-8p. (R. 15 PageID# 1172). The Commissioner contends Plaintiff's assertion should be rejected.

Plaintiff and the Commissioner both make arguments predicated on the assumption that the ALJ performed an analysis of Plaintiff's mental impairments in a way that satisfied the *de minimus* threshold test at Step Two. (R. 15 PageID# 1171; R. 17 PageID# 1198). The Sixth Circuit construes the determination of severity at step two "a *de minimis hurdle* in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id*. The goal of the test is to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985); *see also Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).

At Step Two of the sequential evaluation process, an ALJ must evaluate a claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). If a claimant has a medically determinable mental impairment, an ALJ "must then rate the degree of functional limitation

resulting from the impairment(s)" with respect to "four broad functional areas." 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). The four broad functional areas are also commonly referred to as the "paragraph B" criteria. *See, e.g., Powell v. Comm'r of Soc. Sec.*, No. 5:15 CV 1775, 2016 U.S. Dist. LEXIS 131336, at *6 (N.D. Ohio Sep. 26, 2016) (Baughman, M.J.). The regulations require that the analysis be addressed in the ALJ decision:

> At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R § 404.1520a(e)(4). In sum, the decision must incorporate specific findings as to the degree of limitation assessed in each of the functional areas.

Here, the ALJ summarized the treatment records and findings of Dr. Van Keuren (Tr. 17-18) and Dr. Proctor (Tr. 18-19), the findings and opinion of consultative psychologist Dr. Evans (Tr. 18), and the opinion of state agency psychologist Dr. Terry (Tr.18). Rather than rendering specific findings regarding Plaintiff's degree of limitation in the four functional areas described in 20 C.F.R. 404.1520a(c), pursuant to 20 C.F.R. 404.1520a(e)(4), the ALJ broadly relied upon opinion evidence to conclude, "[t]he claimant has the following non-severe impairment that would have no more than a minimal effect on his mental ability to perform basic work activities: adjustment disorder with depression," (Tr. 17) and then provided a detailed discussion of pertinent provider opinions and records to conclude "[f]rom all of this, I find the claimant has no severe mental impairment." (Tr. 19).

The Sixth Circuit has recognized that "[i]t is an elemental principle of

12

administrative law that agencies are bound to follow their own regulations." *Wilson*, 378 F. 3d at *545. Generally, we review decisions of administrative agencies for harmless error. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir.2001). In determining whether the ALJ's failure to address the B criteria under §404.1520a is harmless error, a court need only "ask whether the record indicates that the claimant's mental impairment would have ultimately satisfied the B criteria." *Rabbers v. Commissioner of Soc. Sec. Admin.* 582 F. 3d 647, 657. In *Rabbers*, the Sixth Circuit held the "special technique of section 404.1520a does not confer such an 'important procedural safeguard' upon claimants that an ALJ's failure to rate the B criteria will rarely be harmless." *Id.*

This court is able to determine the limiting effects of the impairment based on the ALJ's Step Two analysis despite the fact the ALJ did not defining the four categories. (Tr. 17-19). The ALJ discussed Dr. Van Keuren's diagnosis of an adjustment disorder with depressed mood on April 25, 2017 (Tr. 17) and recommended treatment at the Pain Management Clinic for Plaintiff's complaints of chronic pain. (Tr. 17-18). The ALJ evaluated the August 14, 2018 objective observations of Dr. Evans including that plaintiff's normal or unremarkable mental status examination and the fact he did not meet DSM-5 criteria for a psychiatric disorder. (Tr. 18). The ALJ evaluated Plaintiff's March 19, 2019 presentation to Dr. Proctor, noting Plaintiff appeared pleasant, cooperative, alert, well-groomed, made good eye contact, and did not lose track of questions or topics despite pain spikes with a mildly to moderately depressed mood. *Id*.

With respect to opinion evidence, the ALJ weighed Dr. Evans' observations and opinion that Plaintiff had no significant difficulties in the "four work-related mental abilities" against Plaintiff's unremarkable presentation on mental status testing, and

Plaintiff's limited course of mental health treatment. (Tr. 18). The ALJ also weighed Dr. Proctor's opinion, quoted extensively above, and found it to be persuasive as it was supported by the psychiatrist's mental status examination of Plaintiff, Dr. Evans' opinion, and Plaintiff's lack of treatment. (Tr. 19).

Finally, the ALJ weighed and considered State agency psychologist Dr. Terry's analysis of the § 404.1520a(c) areas of functioning and conclusion that Plaintiff had a mild limitation in concentrating, persisting or maintaining pace, and otherwise no limitation in functioning. (*Id.*). The ALJ concluded the opinion was persuasive as it was consistent with the mental status examinations and opinions of Dr. Evans and Dr. Proctor (Tr. 18). The ALJ provided a sufficient analysis to conclude Plaintiff's mental impairment resulted in, at best, a mild limitation in his ability to concentrate, persist and maintain pace, and otherwise no limitation in mental functioning. Therefore, the ALJ's failure to more specifically address the four broad areas of functioning is harmless.

Plaintiff also contends, based on the ALJ's finding that Plaintiff's adjustment disorder with depression is not severe, that the ALJ's residual functional capacity (RFC) assessment should have accounted for mild limitations in concentration, persistence or pace. (R. 15 PageID# 1172-73 (citing *Richardson v. Saul*, No. 5:20-CV-38-REW, 2021 WL 37705, at *3 (E.D. Ky. Jan. 5, 2021)). Plaintiff's reliance on *Richardson* is misplaced. There, the ALJ found no more than mild limitations at Step Two and incorporated the finding into the residual functional capacity discussion, while also giving great weight to an opinion that found more restrictive, "mild to moderate" mental limitations, without addressing the inconsistency. *Id.* at *799-800. The reviewing court could not discern the impact of plaintiff's mild to moderate limitations on the ability to

14

perform work activity. Here, it is apparent from the ALJ's consideration of the various provider opinions and pertinent records that Plaintiff was only occasionally mildly impaired in the areas of concentration, persistence or pace, which provided no reasonable basis for inclusion of mental limitations in the RFC.

It is true that when a claimant has more than one impairment, an ALJ should "consider all of your medically determinable impairments of which we are aware, including…medically determinable impairments that are not 'severe' ...." 20 C.F.R. § 404.1545(a)(2). "Contrary to Plaintiff's apparent contention, the ALJ's determination that she had some mild impairment does not require inclusion of mental limitations into the RFC." *Caudill v. Comm'r of Soc. Sec*., No. 2:16-cv-818, 2017 WL 3587217 at *6 (S.D. Ohio Aug. 21, 2017) (*citing Little v. Comm'r of Soc. Sec*., No. 2:14-cv-532, 2015 WL 5000253 at *14 (S.D. Ohio Aug. 24, 2015). Courts in this circuit have routinely rejected the same argument now advanced by Plaintiff. *See, e.g., Little*, 2015 WL 5000253 at *14 ("In finding that Plaintiff's social functioning limitation are mild [sic], the ALJ determined that findings of more severe limitations in this domain by others ... were not credible. Thus, the ALJ permissibly declined to include social functioning limitations in the RFC."); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862 at *4-5 (S.D. Ohio Aug. 3, 2012) (finding that substantial evidence supported the ALJ's determination that the claimant's mental impairments were mild enough not to warrant specific RFC limitations)); *accord McDowell v. Comm'r of Soc. Sec. Admin*., No. 1:20-CV-00297-SL, 2021 WL 1911459, at *9 (N.D. Ohio Apr. 19, 2021) (Henderson, M.J.), *report and recommendation adopted*, 2021 WL 1909789 (N.D. Ohio May 12, 2021). That decision aptly concluded, "That the ALJ found Claimant had mild limitations in regards to the

functional areas does not mandate inclusion of limitations in the RFC." *Id.* In fact, the Sixth Circuit has held that sometimes even those impairments that are deemed "severe" at Step Two do not always have to be included in the RFC. *See Griffeth v. Comm'r of Soc. Sec.,* 217 Fed. App'x 425, 429 (6th Cir. 2007) (rejecting "the proposition that all impairments deemed 'severe' in step two must be included in the hypothetical.").

Although it is possible to find reversible error if an ALJ's decision is completely devoid of any discussion concerning a claimant's mild mental impairments, that is not this case. While the ALJ's decision at times integrates the Step Two and Step Four findings, that alone is not cause for remand. Moreover, the ALJ expressly relied on the State Agency psychologists' opinions who did not find Plaintiff's mental impairments to be severe. (Tr. 18). Furthermore, the ALJ discussed a number of Plaintiff's activities that he found illustrated Plaintiff's lack of mental-based functional limitations, when assessing Plaintiff's ability to perform work activities, namely: Plaintiff's ability to work (Tr. 20); symptoms including pain (Tr. 20-21); Plaintiff's presentation as "pleasant, calm and in no acute apparent distress" (Tr. 20, *see also* Tr. 22); Plaintiff's subjective complaints (Tr. 21); Dr. Van Keuran's diagnosis of an adjustment disorder with depressed mood (Tr. 22); his ability to perform chores, interact with grandchildren, prepare them dinner, build a project, interact with friends, and his ability to perform activities of daily living. (Tr. 24). The ALJ considered Plaintiff's ability to go rabbit hunting, and make twelve batches of candy. (Tr. 25).

When considering the ALJ's decision as a whole, including the discussion of the medical opinions and prior administrative medical findings, in combination with the ALJ's discussion of Plaintiff's ability to perform activities of daily living, interact with

others, manage himself, and perform tasks requiring attention and concentration, the Court cannot conclude that the ALJ improperly ignored the impact of Plaintiff's mental impairments. Rather, it is apparent the ALJ determined that no mental-based limitations were warranted when assessing Plaintiff's RFC. Therefore, the Court finds the first assignment of error without merit.

### 2. Medical Source Opinions

In the second assignment of error, Plaintiff contends the ALJ erred by failing to properly evaluate the opinions of Physical Therapist Wood and Dr. Radigan, "playing doctor" in his assessment of evidence, and mischaracterizing evidence. (R. 15 PageID# 1176, 1179, 1181). The Commissioner argues that the ALJ complied with revised regulations and properly addressed the opinion evidence. (R. 17 PageID# 1197). The Court agrees and finds Plaintiff's contentions lack merit.

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). To the contrary, "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence ... [and] has final responsibility for deciding an individual's RFC." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x 719, 728 (6th Cir. 2013); *see also Conner v. Comm'r of Soc. Sec.*, 658

17

Fed. App'x 248, 253-254 (6th Cir. 2016) (noting that an ALJ must review the record to provide a good reason for discounting a treating physician's opinion such as finding it "'unsupported by sufficient clinical findings and…inconsistent with the rest of the evidence.'") (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a medical provider's opinion because it too heavily relied on the patient's complaints).

Plaintiff's claim was filed on February 23, 2018. (Tr. 165). The "treating physician rule" was eliminated by a change in social security regulations that applies to all claims filed after March 27, 2017. (R. 17, PageID# 1195-96). Indeed, the regulations no longer use the term "treating source," instead utilizing the phrase "your medical source(s)." 20 C.F.R. § 404.1520c. Moreover, the change is not merely semantic, as the regulation explicitly states that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from your medical sources." *Id*.

However, the new regulations are not devoid of any requirements as it relates to an ALJ's duty to explain the weight assigned to medical opinions. An ALJ is required to articulate how he or she considered the factors of "supportability" and "consistency," which are the two "most important factors" in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding. 20 C.F.R. § 416.920c(b) & (c). With respect to the opinions of Mr. Wood and co-signed by Dr. Radigan, the ALJ noted that following Wood's functional assessment he determined that "claimant tested into the sedentary to unemployable range." (Tr. 21). The ALJ detailed the scope of the examination and opinions before concluding:

Mr. Wood's medical opinion is not persuasive because it is not supported by the objective medical evidence. That day, x-rays of the claimant's lumbar spine showed "mild" multilevel disc bulging with no disc herniation or canal stenosis. The claimant's gait was antalgic and he moved slow, but he had 5/5 (normal) strength in the lower extremities and 5/5 (normal) strength in the upper extremities. The claimant reported feelings of nausea and dizziness on two to three different occasions when his pain reached at 9/10, but his vitals were checked and remained "within normal limit" (4F/11-12, 14). Mr. Wood stated that the claimant demonstrated limited functional ability secondary to pain (4F/14). I find that Mr. Wood's medical opinion is based heavily on the claimant's subjective complaints as opposed to the objective medical evidence. Furthermore, Mr. Wood's medical opinion is not persuasive because it is not consistent with the claimant's limited course of treatment for any medical condition.

****

Mr. Wood's medical opinion is not persuasive because it is not supported by the objective medical evidence. That day, Mr. Wood reviewed the September 2017 MRI of the claimant's lumbar spine that showed "mild" and "moderate" findings. The claimant had 5/5 (normal) strength in the lower extremities and 5/5 (normal) strength in the upper extremities. I find that Mr. Wood's medical opinion is based heavily on the claimant's subjective complaints as opposed to the objective medical evidence. Furthermore, Mr. Wood's medical opinion is not persuasive because it is not consistent with the claimant's limited course of treatment for any medical condition.

(Tr. 21, 23).

Plaintiff mischaracterizes the ALJ's analysis as a "failure to provide legitimate reasons" for rejecting the opinion and focuses on Plaintiff's subjective presentation. (R. 15 PageID# 1177). Plaintiff also appears to misconstrue what the regulations mean by "supportability," which is defined as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1) (emphasis added). Mr. Wood's medical opinions themselves offer minimal supporting explanations or objective medical evidence to support the limitations

19

he assessed. For example, the ALJ addressed the fact Mr. Wood relied on Plaintiff's subjective complaints of pain, statement that he needed to lay down, and instability, but failed to address the fact that on the same day, Plaintiff's MRI and normal manual muscle testing contraindicated his conclusions. (Tr. 23). Likewise, Plaintiff's citations to treatment records not actually relied upon or identified by the medical source does not render the opinion "supportable," as the regulations specifically look to the medical source's own presentation of objective evidence and/or supporting explanations rather than a claimant's post hoc rationale.

The ALJ further concluded that Mr. Wood's opinion was not consistent with his own observations, those of Dr. Radigan, and the overall evidence of record including Plaintiff's statements regarding his ability to hunt, cook, work outside, the reason he stopped working, and his limited physical therapy. (Tr. 24).

Contrary to Plaintiff's suggestion, an ALJ is not "playing doctor" or exceeding its administrative role by identifying inconsistencies between a medical source's proffered medical opinion and that same source's own treatment notes. The regulations do *not* require a contrary "medical opinion" from another medical source before an ALJ may make a finding of "inconsistency." Instead, the regulations define "consistency," and explicitly instruct an ALJ to consider "*evidence* from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2) (emphasis added). Medical evidence—for claims filed after March 27, 2017—includes both "objective medical evidence" as well as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with

20

response, or prognosis." 20 C.F.R. § 416.913(a)(3). Plaintiff's position—that an ALJ

plays doctor by considering a medical source's own treatment notes, including statements

concerning clinical findings or judgments about the severity of impairments—is simply

inconsistent with the mandate of the regulations. The Court finds the ALJ properly

assessed Mr. Wood and Dr. Radigan's opinions and substantial evidence supports the

ALJ's conclusion.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States District Judge

Date: September 30, 2022